UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LESTER BROCK, | ) |
| | ) |
| Plaintiff, | ) 17 C 3393 |
| | ) |
| vs. | ) Judge Gary Feinerman |
| | ) |
| CITY OF CHICAGO and ANTHONY BRUNO, | ) |
| individually and as an agent of the City of Chicago, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Lester Brock sued four Chicago police officers and the City of Chicago, alleging that his rights under federal and state law were violated when he was arrested and then prosecuted for marijuana and weapons possession. Doc. 1. After Brock twice amended his complaint, Docs. 16, 24, the court granted the City's motion to dismiss his *Monell* claim, Doc. 38. Brock then voluntarily dismissed his claims against three of the four officers. Docs. 63, 64; Doc. 75 at ¶ 2. The remaining defendants—Officer Anthony Bruno and the City—move for summary judgment. Doc. 65. The motion is granted.

**Background**

The following facts are stated as favorably to Brock as permitted by the record and Local Rule 56.1. *See Woods v. City of Berwyn*, 803 F.3d 865, 867 (7th Cir. 2015). In considering Defendants' motion, the court must assume the truth of those facts, but does not vouch for them. *See Arroyo v. Volvo Grp. N. Am.*, LLC, 805 F.3d 278, 281 (7th Cir. 2015). Brock's Local Rule 56.1(b)(3)(B) response, Doc. 75, offers no response to several paragraphs of Defendants' Local Rule 56.1(a)(3) statement, Doc. 66, so the factual assertions in those paragraphs are deemed admitted. *See* L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the

1

moving party will be deemed to be admitted unless controverted by the statement of the opposing party.").

From 2007 to 2010, Brock lived at 8759 South Loomis Street in Chicago. Doc. 75 at ¶ 5; Doc. 79 at ¶ 3. In January 2010, Brock provided that address when applying for an Illinois state ID card; the voter registration card he used to apply for the state ID also listed 8759 South Loomis as his address. Doc. 75 at ¶¶ 6-9; Doc. 79 at ¶¶ 9-10. Brock did not change the address on his state ID card until 2016—after the events at issue in this case. Doc. 75 at ¶ 12.

On December 28, 2015, a confidential informant told Officer Bruno that he purchased approximately 3.5 grams of marijuana from "Lester" that day and on several previous occasions. *Id*. at ¶¶ 13-14. The informant told Bruno that the December 28 buy took place at 8759 South Loomis and that "Lester" had gone into a bedroom and returned with a duffle bag containing a large quantity of the drug. *Id*. at ¶ 14. Using several different databases, Bruno attempted to identify the seller. *Id*. at ¶¶ 19-22.

Although Brock no longer lived at 8759 South Loomis at the time, Doc. 79 at ¶ 1, Bruno's searches revealed several connections between Brock and that address. The address was listed as Brock's residence in a database maintained by the Illinois Secretary of State. *Id*. at ¶¶ 26-27. It was listed in a criminal history database as Brock's residence after an October 2012 arrest. Doc. 66-7 at 3; Doc. 75 at ¶ 25. And a separate database listed Brock as having been the victim of a crime at that address. Doc. 66-6 at 4; Doc. 75 at ¶ 22. After a search of the Chicago police department's CLEAR database for "8759 S. Loomis" yielded a photograph of Brock, Bruno showed it to the informant, who confirmed it was the same "Lester" from whom he bought marijuana. Doc. 75 at ¶¶ 29-30. Bruno drove the informant to the South Loomis address, where he confirmed that that was where he bought marijuana from "Lester." *Id*. at ¶ 30.

Bruno then prepared a Complaint for Search Warrant, identifying both Brock and the first-floor unit of the 8759 South Loomis address as targets. *Id*. at ¶¶ 34-35, 39. To support the application, Bruno averred that he "had a conversation" with the informant—referred to as "J. Doe"—who "stated that on 28 Dec 2015 [he] met with an individual known as Lester in the first floor unit of a brown brick two story, two unit building at 8759 S. Loomis." Doc. 66-9 at 3. Bruno noted that the informant purchased 3.5 grams of marijuana from "Lester" during the encounter. *Id*. at 4. Bruno further averred that when he and the informant drove by the South Loomis address, the informant "positively identified the first floor of this building as the residence where [he] purchased the Cannabis from Lester." *Ibid*. Bruno added that, "using the information given by J. Doe and the Chicago Police Department Database[, he] was able to find a mug shot of Lester Brock," and that the informant "identified the Lester Brock in the mug shot as the individual J. Doe purchased the cannabis from while inside the first floor unit of 8759 S. Loomis." *Ibid*. The informant testified before a Circuit Court of Cook County judge, who issued the warrant. Doc. 75 at ¶¶ 36, 38.

On December 29, 2015, a team of Chicago police officers executed the search warrant. *Id*. at ¶¶ 40-41. One officer observed an individual matching Brock's physical description fleeing the area. *Id*. at ¶ 42. The search of the first-floor unit yielded approximately half a kilogram of marijuana, two firearms (a Rohm .22 caliber revolver and a Glock .40 semiautomatic handgun), ammunition for both weapons, and cash. *Id*. at ¶ 46. Bruno issued an "investigative alert" for Brock, who was ultimately arrested on March 13, 2016. *Id*. at ¶¶ 51-52. At the time of the arrest, Brock had been convicted of at least one felony and did not have a Firearm Owners Identification ("FOID") card. *Id*. at ¶¶ 58-59.

On March 13, 2016, Brock was charged by criminal complaint with one count of possession of cannabis with intent to deliver under 720 ILCS 550/5(e) and two counts of unlawful possession of a weapon by a felon under 720 ILCS 5/24-1.1(a). Doc. 66-15 at 2-4; Doc. 75 at ¶ 54. A superseding indictment, filed on April 7, 2016, charged Brock with four counts of unlawful possession of a weapon by a felon under 720 ILCS 5/24-1.1(a) (one count for each gun, and two counts for the corresponding ammunition), two counts of possession of a firearm without a valid FOID card under 430 ILCS 65/2(a)(1), and two counts of possession of cannabis with intent to deliver under 720 ILCS 550/5(d). Doc. 66-15 at 5-14; Doc. 75 at ¶ 55. The FOID-related charges were dropped, and Brock later was found not guilty of the remaining charges after a jury trial. Doc. 75 at ¶ 56.

## Discussion

Brock's complaint has three counts. Count I and II allege false arrest under 42 U.S.C. § 1983 and Illinois law, while Count III alleges malicious prosecution under Illinois law.

### I. Section 1983 False Arrest Claim Against Bruno

"A claim of false arrest is an allegation that a plaintiff was arrested without probable cause, in violation of the Fourth Amendment. Probable cause is an absolute defense to such a claim." *Hurt v. Wise*, 880 F.3d 831, 841 (7th Cir. 2018) (citation omitted). "Probable cause exists at the time of an arrest if the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing that the suspect has committed, is committing, or is about to commit an offense." *Ewell v. Toney*, 853 F.3d 911, 919 (7th Cir. 2017) (alterations and internal quotation marks omitted); *see also D.Z. v. Buell*, 796 F.3d 749, 755 (7th Cir. 2015) (same). Probable cause "is a fluid concept that relies on the common-sense judgment of the officers based on the totality of the circumstances." *Williams v.*

*City of Chicago*, 733 F.3d 749, 756 (7th Cir. 2013) (internal quotation marks omitted). "Probable cause is gauged from the vantage point of a reasonable officer facing the same situation." *Ewell*, 853 F.3d at 919. "Probable cause does not require an actual showing of criminal activity, or even that the existence of criminal activity is more likely true than not; instead, probable cause merely requires that a probability or substantial chance of criminal activity exists." *United States v. Howard*, 883 F.3d 703, 707 (7th Cir. 2018) (internal quotation marks omitted).

Bruno indisputably had probable cause to arrest Brock. To review: Bruno first learned from an informant that "Lester" was selling enough marijuana at 8759 South Loomis Street to fill a duffel bag. Doc. 75 at ¶¶ 13-14. Brock—whose first name is Lester—was associated with the South Loomis address in several ways. It was the address on his state ID card from 2010 through 2016; it was the address listed as his residence in the Illinois Secretary of State's computer system; it was the address listed as his residence when he was arrested in 2012; and it was the address listed in a Chicago police department database as the location where Brock had been the victim of a crime. *Id*. at ¶¶ 6-8, 12, 22, 25-27; Doc. 79 at ¶¶ 9-10; Doc. 66-7 at 3. Moreover, a search of the Chicago police department's CLEAR database yielded a photograph of Brock that was validated by the informant as depicting the same "Lester" who sold him the drugs at the South Loomis address. Doc. 75 at ¶¶ 29-30. And a search of 8759 South Loomis pursuant to the search warrant found over half a kilogram of marijuana and two firearms and accompanying ammunition. *Id*. at ¶ 46.

Against this backdrop, no reasonable juror could find, given the totality of the circumstances known to Bruno at the time, that it was unreasonable for him to have believed that Brock possessed the drugs, weapons, and ammunition found at the South Loomis address. *See*

5

*Cathey v. Garcia*, 715 F. App'x 564, 566 (7th Cir. 2018) ("Cathey states that he was at the scene of the crime, his shirt was stained with blood, and an eyewitness (albeit a suspect himself) identified him as the shooter. It would be reasonable for any officer faced with these circumstances to believe that Cathey had committed a crime."); *United States v. Payne*, 654 F. App'x 844, 846 (7th Cir. 2016) (holding that officers had probable cause to arrest the defendant for unlawful firearms possession because intercepted phone calls "described a proposed firearm exchange at the exact intersection where police later found [him]" and the officers recognized the defendant at the scene from investigation photos and saw him "standing next to … a car they knew he owned based on other intercepted calls and a contemporaneous registration check").

As to the drugs, Brock offers two rejoinders. First, he contends that at the time of his arrest, he had long since stopped living at the South Loomis address. Doc. 74 at 3-4; Doc. 79 at ¶ 1. But Bruno did not need to determine whether Brock, in fact, lived at 8759 South Loomis—let alone that he was on the lease or when exactly he stopped living there—to have had probable cause to seek Brock's arrest. Doc. 74 at 3. "The Fourth Amendment does not require probable cause to believe evidence will *conclusively* establish a fact … ." *Messerschmidt v. Millender*, 565 U.S. 535, 552 n.7 (2012); *see also Seiser v. City of Chicago*, 762 F.3d 647, 654 (7th Cir. 2014) (same). For the reasons already given, there was more than enough evidence for Bruno to tie Brock to the South Loomis address, and therefore to make it at least reasonable for Bruno to think that Brock was selling drugs at that address even if he did not live there. *See London v. Guzman*, 26 F. Supp. 3d 746, 754 (N.D. Ill. 2014) ("Whether London actually resided at 8010 S. Manistee Street, Chicago, Illinois, or engaged in drug transactions 'is not material to the determination of probable cause; the test is an objective one—what the police know, not whether they know the truth, that matters.'") (quoting *Sheik-Abdi v. McLellan*, 37 F.3d 1240, 11247 (7th

6

Cir. 1994)); *Horne v. Wheeler*, 2005 WL 2171151, at *5 (N.D. Ill. Sept. 6, 2005) ("It is not uncommon for criminals to conduct illegal activity at locations other than their primary residence. The confidential informant provided officers with sufficient information to establish both a reasonable probability that Rice was engaged in illegal activity and that illegal activity was occurring within the apartment located at 2947 W. Warren. Thus, the fact that Rice did not reside at that address was immaterial to the probable cause inquiry.").

Second, Brock contends that the information supplied by the informant was unreliable. Doc. 74 at 3. In support, Brock notes that the informant had a criminal background and that he received payment for the information he provided. *Ibid.*; Doc. 79 at ¶¶ 14, 21. (Brock also asserts that the informant used and sold drugs for over 10 years, Doc. 76 at ¶ 15, but that assertion is disregarded because it is not supported by the cited materials. *See* N.D. Ill. L.R. 56.1(b)(3)(C).). Here, too, Brock is mistaken.

In evaluating the reliability of an informant in a closely related context—determining whether a search warrant application relying on information from an informant satisfies the probable cause standard—a court must "focus[] on the informant's reliability, veracity, and basis of knowledge." *Junkert v. Massey*, 610 F.3d 364, 368 (7th Cir. 2010) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). The inquiry is guided by several nonexhaustive factors, including "the degree of police corroboration of the informant's information," "whether the information is based on the informant's personal observations," "the amount of detail provided by the informant," and "whether the informant personally appeared before the warrant-issuing judge." *Ibid.*; *see also United States v. Johnson*, 867 F.3d 737, 741 (7th Cir. 2017) (applying those factors); *United States v. Sutton*, 742 F.3d 770, 773 (7th Cir. 2014) (same); *London*, 26 F. Supp. 3d at 751-52 (same in a § 1983 false arrest case). Each factor supports Defendants.

7

As to the first two factors, "there is no real issue regarding the [informant's] firsthand knowledge," *Sutton*, 742 F.3d at 773, or the level of detail he provided, as the parties do not dispute that the informant told Bruno that, on December 28, 2015, he personally bought 3.5 grams of marijuana from "Lester" at the 8759 South Loomis address and personally observed "Lester's" duffel bag of drugs. Doc. 75 at ¶¶ 13-14; *see Johnson*, 867 F.3d at 741 ("[The informant's] description of the activities at [the defendant's] condo was detailed and based on firsthand knowledge. He specified that he purchased 150-200 grams of heroin from [the defendant] on a weekly basis. He described to agents the manner in which he paid for the heroin and how much it cost. He told agents the location where he purchased the heroin, and he specified the unit number of the condo. He told agents that his most recent purchase of 200 grams of heroin at Johnson's condo was on April 10, 2011, merely two days before agents obtained and executed a search warrant at the condo."); *Sutton*, 742 F.3d at 773 (similar). As to the third factor, Bruno took several steps to corroborate that Brock was the "Lester" described by the informant, including by showing the informant a photograph of Brock taken from the Chicago police department's CLEAR database, taking the informant to the South Loomis address, and searching through other databases. Doc. 66-7 at 3; Doc. 75 at ¶¶ 19-27, 29-30; *see Johnson*, 867 F.3d at 742 (holding that police officers' corroborating database searches "further support[ed] the reliability of [the informant's] statements"); *Sutton*, 742 F.3d at 773-74 ("Lombardi did take sufficient steps to corroborate the CI's information: Lombardi confirmed that Sutton was 'Cap' by searching law enforcement databases; Lombardi confirmed the CI's identification of Sutton by showing the CI a mugshot of Sutton; Lombardi drove past the address the CI identified as the location where he observed Sutton with the cocaine; and Lombardi verified that Foster was the tenant of the apartment after the CI informed Lombardi of the

8

relationship between Foster and Sutton."). And as to the fourth factor, the informant testified before a state court judge who then approved the search warrant, and the search conducted pursuant to the warrant yielded over half a kilogram of marijuana together with two firearms and ammunition, thus further corroborating the informant's statement that he had bought marijuana at the South Loomis address. Doc. 75 at ¶¶ 36, 38, 46; *see United States v. Thomas*, 835 F.3d 730, 735 (7th Cir. 2016) (holding that "[i]n evaluating a probable cause determination based on a confidential witness's report," a court must also consider "whether the informant appeared or testified before the magistrate") (internal quotation marks omitted); *United States v. Ganser*, 315 F.3d 839, 843 (7th Cir. 2003) (in evaluating whether postal inspectors had reasonable suspicion to remove a letter from the mail stream, noting that "[i]f an informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity") (internal quotation marks omitted).

Brock further challenges the informant's credibility on the ground that he was paid for the information he supplied to Bruno. Doc. 74 at 3. But that fact alone does not undermine Bruno's probable cause to arrest Brock given the other indicators of the informant's reliability. *See Purvis v. Oest*, 614 F.3d 713, 723 (7th Cir. 2010) ("[T]he district court noted evidence that Bernabei knew that M.R. was working as a paid police informant. … But standing alone, and even viewed in the light most favorable to Purvis, it does not negate the existence of probable cause, which does not even require proof of guilt by a preponderance of the evidence.") (brackets and internal quotation marks omitted); *United States v. Olson*, 408 F.3d 366, 371 (7th Cir. 2005) ("A motive to curry favor, however, does not necessarily render an informant unreliable. Indeed, even informants attempting to strike a bargain with the police have a strong incentive to provide

accurate and specific information rather than false information about a defendant's illegal activity.") (brackets and internal quotation marks omitted).

All this applies with equal force to the weapons found during the search. True, the informant did not report that he saw Brock with the weapons. Doc. 74 at 4. But given the many connections between Brock and the South Loomis address where the weapons were found, the informant did not need to see Brock with them for Bruno to have probable cause to believe that Brock possessed them. *See Messerschmidt*, 565 U.S. at 552 n.7 (holding that "conclusive" proof of guilt is not required for probable cause to arrest); *Seiser*, 762 F.3d at 654 (same). In any event, for purposes of the false arrest claim, it was sufficient for Bruno to have had probable cause to arrest Brock solely for drug possession regardless of whether he also had probable cause to arrest Brock for weapons possession. *See Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017) ("We have previously explained that 'probable cause to believe that a person has committed *any* crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause … .'") (alterations in original) (quoting *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007)).

Accordingly, Bruno is entitled to summary judgment on Brock's Fourth Amendment false arrest claim.

## II. State Law Claims Against Bruno

Brock's state law false arrest and malicious prosecution claims against Bruno fail for substantially the same reasons.

### A. State Law False Arrest Claim

"Lack of probable cause is a[n] … element of the Illinois claim[] of false arrest … ." *Stokes v. Bd. of Educ. of the City of Chicago*, 599 F.3d 617, 626 (7th Cir. 2010) (citing *Ross v.*

*Mauro Chevrolet*, 861 N.E.2d 313, 317 (Ill. App. 2006)); *see also Gauger v. Hendle*, 954 N.E.2d 307, 327 n.6 (Ill. App. 2011) ("If probable cause existed for the arrest, an action for false arrest cannot lie.") (emphasis and internal quotation marks omitted); *Johnson v. Target Stores, Inc.*, 791 N.E.2d 1206, 1220 (Ill. App. 2003) ("To sustain an action for false arrest, plaintiff must prove restraint or arrest caused or procured by the defendant, without his having reasonable grounds to believe that an offense was committed by the plaintiff."). The standard for assessing probable cause is the same under Illinois and federal law. *See Gauger*, 954 N.E.2d at 329 ("[I]n assessing probable cause to arrest, the existence of probable cause depends on the totality of the circumstances at the time of the arrest. The determination is based on facts known to the police at the time of the arrest.") (citation omitted); *Holm v. Clark*, 2012 WL 1015956, at *6 (N.D. Ill. Mar. 23, 2012) ("The determination of whether probable cause exists is the same under Illinois law as it is under federal law.") (citing cases).

Thus, for the reasons given above, no reasonable juror could conclude that Bruno falsely arrested Brock under Illinois law. *See Stokes*, 599 F.3d at 626 (holding that "[t]he fact that [the defendant] had probable cause to sign the criminal complaints for the [plaintiffs'] arrest means that defendants are also entitled to summary judgment on [the plaintiffs'] supplemental state-law claims" for false arrest, false imprisonment, and malicious prosecution); *Johnsen v. Vill. of Rosemont*, 2013 WL 3668819, at *4 (N.D. Ill. July 12, 2013) (holding that, where the arresting officers had probable cause under federal law to arrest the plaintiff, the plaintiff's "state law claim for false arrest fails for the same reasons"). Bruno therefore is entitled to summary judgment on the state law false arrest claim.

11

### B. State Law Malicious Prosecution Claim

Probable cause is similarly a complete defense to a malicious prosecution claim under Illinois law. *See Colbert v. City of Chicago*, 851 F.3d 649, 654-55 (7th Cir. 2017) ("To establish a claim for malicious prosecution under Illinois law, plaintiffs must establish five elements: (1) commencement or continuation of an original proceeding by the defendant; (2) termination of the proceeding in favor of the plaintiff; (3) *the absence of probable cause*; (4) malice; and (5) damages. The absence of any one of these elements bars a plaintiff from pursuing the claim") (emphasis added) (citation, brackets, and internal quotation marks omitted); *Stokes*, 599 F.3d at 626 (same) (citing *Fabiano v. City of Palos Hills*, 784 N.E.2d 258, 265 (Ill. App. 2002)). In a malicious prosecution action against police officers, "the pertinent time for making the probable cause determination is the time when the charging document is filed, rather than the time of the arrest." *Holland v. City of Chicago*, 643 F.3d 248, 254 (7th Cir. 2011) (citing *Porter v. City of Chicago*, 912 N.E.2d 1262, 1274 (Ill. App. 2009)); *see also Gauger*, 954 N.E.2d at 329-30 (distinguishing between "probable cause to arrest" and "probable cause to prosecute," and noting that the question in a malicious prosecution case is "whether defendants had probable cause to charge plaintiff") (emphasis omitted). Probable cause for purposes of malicious prosecution under Illinois law "is defined as a state of facts that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged. It is the state of mind of the person commencing the prosecution that is at issue—not the actual facts of the case or the guilt or innocence of the accused." *Gauger*, 945 N.E.2d at 329-30 (citation, emphasis, and internal quotation marks omitted); *see also Cairel v. Alderden*, 821 F.3d 823, 834 (7th Cir. 2016) (same).

As noted, the record evidence indisputably shows that at the time the charges against Brock were filed—which was the day of his arrest, some ten weeks after the search warrant was executed—Bruno had the benefit of the informant's report, the database searches he conducted, and the half kilogram of marijuana, two firearms, and ammunition found at the South Loomis address. Doc. 75 at ¶¶ 7-14, 19-27, 29-30, 46. Bruno also had been told that an officer executing the warrant saw a man matching Brock's physical description fleeing the area. *Id*. at ¶ 42. And Brock had previously been convicted of a felony and never had an FOID card, making unlawful his possession of the firearms and ammunition. *Id*. at ¶¶ 58-59. The same circumstances prevailed when the superseding indictment was issued three weeks later.

As with the false arrest claim, no reasonable juror could conclude from the record that this state of facts was insufficient to lead Bruno to entertain an honest and sound suspicion that Brock unlawfully possessed the marijuana, the weapons, and the ammunition. *See Seiser*, 762 F.3d at 660 n.6 (noting that the "the Illinois Appellate court has twice rejected the notion that the probable cause standard for the decision to charge is meaningfully different from the probable cause standard for the decision to arrest") (citing cases). And as with the false arrest claim, Brock's arguments that he did not live at the South Loomis address and that the informant did not actually observe him with the weapons are not persuasive. *See London*, 26 F. Supp. 3d at 755-56 ("The record evidence shows that Officer Guzman received a tip from a reliable, confidential informant that London specifically … was conducting crack cocaine sales, and not merely possessing crack cocaine, from the basement apartment at 8010 S. Manistee Street, Chicago, Illinois. … A person of ordinary care and prudence, relying on the information available at the time of subscribing the criminal complaint, could have believed or entertained a strong and honest suspicion that London had the intent and capacity to exercise control and

13

dominion over the crack cocaine recovered from the apartment as is required to commit possession of a controlled substance.").

Brock's malicious prosecution claim fails for a second and independent reason.  Under Illinois law, "a plaintiff may not maintain a malicious-prosecution claim against an arresting officer without first showing 'some postarrest action which influenced the prosecutor's decision to indict.'" *Colbert*, 851 F.3d at 655 (quoting *Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 902 (7th Cir. 2001)); *see also Starks v. City of Waukegan*, 123 F. Supp. 3d 1036, 1061 (N.D. Ill. 2015) ("[E]ven if Waukegan Defendants had probable cause to arrest Starks, they still can be liable for malicious prosecution if they took an active part in the prosecution after learning that there was no probable cause for believing the accused guilty.") (alterations and internal quotation marks omitted).  Because Brock identifies no such action on Bruno's part—Brock notes only that Bruno testified at his trial, Doc. 79 at ¶ 22—Bruno is entitled to summary judgment on that ground as well.  *See Colbert*, 851 F.3d at 655 (in holding that the defendant officers were entitled to summary judgment, noting that "[w]hile Officer Willingham's allegedly false statement constitutes a post-arrest action, there is no evidence that it influenced the prosecutor's decision to indict, or that the prosecutor relied on it to obtain the indictment").

### III. Claims Against the City

Brock's *Monell* claim against the City was previously dismissed.  Doc. 38.  Given that Brock asserts no other non-indemnification or non-*respondeat superior* claims against the City, Doc. 24 at p. 5, ¶ 32, and that he has no viable claims against Bruno, the City is entitled to summary judgment as well.  *See Fleming v. Livingston Cnty.*, 674 F.3d 874, 881 (7th Cir. 2012) (granting summary judgment to the jurisdiction employing the defendant police officer after

granting him judgment, and noting that, under Illinois law, "'[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable.'") (quoting 745 ILCS 10/2-109)); *Backes v. Vill. of Peoria Heights*, 662 F.3d 866, 871 (7th Cir. 2011) (same).

**Conclusion**

Defendants' summary judgment motion is granted. Judgment in their favor and against Brock will be entered.

July 25, 2018

United States District Judge